[Sac. No. 1465.   Department One.—July 22, 1907.]

## J. J. GARVEY, Respondent, v. W. S. LASHELLS et al., Defendants; KLAMATH RIVER GOLD MINING COMPANY, Appellant.

VENDOR AND VENDEE—POSSESSION BY VENDEE—AGREEMENT TO CONVEY PERFECT TITLE—REMEDIES OF VENDEE—EJECTMENT BY VENDOR.— A vendee of land in possession thereof under a contract of sale, whereby the vendor agreed to convey a good and perfect title thereto, cannot upon the vendor's failure and inability to convey a good and perfect title retain both the land and the purchase price until a perfect title shall be offered him, but he must pay the purchase price according to the contract and receive such title as the vendor is able to give, if he chooses to retain possession of the land, or he may rescind the contract, restore the possession to the vendor, and recover the purchase money paid, together with the value of his improvements, after deducting therefrom the fair rental value of the premises; and if he fails and refuses to adopt either course he is liable to an action of ejectment by the vendor.

ID.—PURCHASE OF OUTSTANDING TITLE BY VENDEE — ESTOPPEL. — A vendee of land who enters into possession thereof under a contract of sale, whereby the vendor agreed to convey a good and perfect title thereto, and while so in possession buys in an outstanding title, is estopped from denying the title of the vendor in defense to an action by him for the possession.

ID.—COST OF OUTSTANDING TITLE—TENDER OF PURCHASE PRICE—SPECIFIC PERFORMANCE BY VENDEE.—If the vendee in possession perfects the title of the vendor pending the executory contract by buying in an outstanding claim, the perfected title inures to the benefit of the vendor for all the purposes of the agreement, and the utmost that the vendee can ask is to be reimbursed for his outlay in obtaining such title, with interest thereon. And where the vendee has neither tendered nor offered to pay any portion of the purchase price after deducting such outlay, and no excuse for such lack of tender appears, he cannot in an action by the vendor to recover possession obtain specific performance as to the whole land, nor to a portion thereof, upon payment of a proportionate amount of the purchase price, upon the theory that he was the owner of the remaining portion agreed to be paid by reason of his purchase of the outstanding title.

PRACTICE—CROSS-COMPLAINT SEEKING EQUITABLE RELIEF IN EJECTMENT —TRIAL OF ALL ISSUES TOGETHER BY CONSENT—APPEAL.—In an action of ejectment in which a cross-complaint is filed seeking equitable relief, the failure to try the issues arising on the cross-complaint and answer thereto before trying the issues made by the complaint

and answer cannot be objected to on appeal where the record shows
that all the issues were tried together by consent of the parties.

APPEAL from a judgment of the Superior Court of Siskiyou County and from an order refusing a new trial. J. S. Beard, Judge.

The facts are stated in the opinion of the court.

W. F. Aram, Coburn & Collier, and Lewis A. Hilborn, for Appellant.

R. S. Taylor, and James F. Lodge, for Respondent.

ANGELLOTTI, J.—On September 25, 1903, plaintiff and Lucien Guilbert and P. J. Garvey, claiming to own the same, were in the exclusive possession of certain mining ground known as the "Garvey Bar Placer Mining Claim," which consisted of the ground embraced in two locations, one being designated the "Garvey Boys Mine" and the other the "Last Chance." They had been in such possession for five years, mining and operating the ground. On that day they entered into a written agreement with defendant LaShells, whereby they agreed to sell to him said "Garvey Bar Placer Mining Claim," with all machinery thereon, for twelve thousand dollars, payable on July 12, 1904. The vendors agreed that within ten days from September 25, 1903, they would execute "a good and sufficient deed to said property, free and clear of all encumbrances and subject only to the title of the Central Pacific Railway Company in and to such portion of said mining claim as was situated in said section fifteen, and subject only to the paramount title of the government of the United States, in and to" the remainder of said claim, and place the same in the Siskiyou County Bank at Yreka, to be by the bank delivered to the vendee on the payment of the twelve thousand dollars to the bank for the use of the vendors, provided such payment is made at any time prior to the close of banking hours on July 12, 1904. The vendee also agreed to pay one hundred and forty dollars interest on the purchase price on November 12, 1903, and one hundred and five dollars interest on January 12, 1904. It was mutually agreed that if the vendee failed to pay such interest, or failed to pay the twelve thousand dollars

by July 12, 1904, "this agreement is to be void and of no
effect, and the deed which the parties of the first part have
agreed to deposit in the Siskiyou County Bank is to be re-
turned to them by said bank." Immediately upon the execu-
tion of this agreement, possession of the property was deliv-
ered by the vendors to LaShells, who accepted the same under
the agreement. LaShells continued in exclusive possession,
mining the property until April 25, 1904, when he transferred
his interest in the agreement and the property described
therein to the defendant corporation, the Klamath River Gold
Mining Company. Ever since such transfer, such corporation
has been in exclusive possession, mining, working, and operat-
ing such claim. Within the time fixed by the agreement, the
three vendors deposited in escrow with the Siskiyou County
Bank, for delivery to LaShells upon compliance by him with
the provisions of the agreement as to payment, their grant,
bargain, and sale deed purporting to convey the property to
him. Neither LaShells nor the corporation ever paid, or prior
to answer in this action offered to pay, any portion of the
consideration agreed to be paid, and none of the interest has
been paid, and on July 13, 1904, the vendors, because of such
failure to pay the twelve thousand dollars or any part thereof,
withdrew the deed deposited in escrow, and demanded of
LaShells and the corporation the possession of said property.
This demand not having been complied with, and payment
having been refused, and plaintiff having succeeded to the
interest of his co-vendors, this action was instituted for the
recovery of the possession of the property, the amended com-
plaint showing the facts before stated, and the court, upon
sufficient evidence, finding the facts to be as so stated.

Defendant corporation, by its answer, alleged that it ac-
quired the LaShells interest under the agreement on April 25,
1904, and that it has ever since been in the exclusive pos-
session. It further alleged that one Michael Garvey was one
of the original locators of both claims and continued to own
an undivided interest therein to the day of his death, August
17, 1897, and that his estate continued to own such interest
until April 30, 1904, on which day said defendant purchased
such undivided interest from the estate. Basing its claim on
such purchase, it claims to be the owner of such undivided
interest and entitled to possession of the claims. Further al-

leging that the vendors had falsely represented themselves to be the exclusive owners of the property, subject only to the claims of the railroad company and the United States government, that the agreement was entered into by LaShells because of such representations, and that the estate of Michael Garvey was the owner of an undivided interest, which the vendors had neglected to obtain and had never been able to convey, it declared that it was ready and willing to pay the plaintiff the several sums of money specified in the contract "whenever the said plaintiff can convey to it a clear title to said property subject only to the aforesaid interests of the said Central Pacific Railway Company and to the paramount title of the United States."

By its cross-complaint, filed with the answer, it alleged the ownership of the estate of Michael Garvey as to such undivided interest, its purchase thereof from the estate on April 30, 1904, and its consequent ownership and right to possession under said purchase. Further alleging the agreement between the vendors and LaShells, and the assignment thereof by LaShells to it on April 25, 1904, it alleged that by such agreement, the vendors agreed not only to convey their own interest, but also the interest of the estate of Michael Garvey, that the twelve thousand dollars specified therein was the agreed consideration for the whole of said claims, and that the vendors have wholly neglected to acquire the said Michael Garvey interest and convey the same under the agreement. It further alleged that since acquiring the LaShells interest in the agreement, it had placed improvements of the value of ten thousand dollars on the property. On these facts, it demanded judgment decreeing that it is the owner of the Michael Garvey interest, and fixing the proportion of the whole purchase price which ought to be paid to the vendors for the remaining interests, and adjudging that upon the payment of such proportion within a reasonable time a deed be executed to them for such remaining interest.

By his answer to the cross-complaint, plaintiff, alleging that the only agreement of sale between the parties was the one alleged in the complaint, and admitting that Michael Garvey was originally a member of the mining copartnership owning said claims, alleged that his interest had reverted to his associates by reason of his failure and that of his representatives

CLI Cal.—34

to pay his proportional portion of money expended in doing the assessment work upon the property. It further alleged that neither LaShells nor appellant had offered to carry out the contract.

The court, after finding facts in accord with the allegations of the complaint as we have stated them, found that due notice of forfeiture of the Michael Garvey interest to his co-owners for failure to pay his proportion of the amount of assessment work had been given on February 23, 1904, but, as will appear hereafter, we deem this finding immaterial. It also found that on April 30, 1904, the defendant corporation acquired at probate sale for the sum of three hundred dollars all the interest of the estate of Michael Garvey in said claims, and that neither LaShells nor appellant had ever made any tender of any character other than the offer in its answer already stated, both of which findings are sustained by the evidence.

Concluding that the most that appellant could claim for the failure in part, if any, of plaintiff's title, would be the amount paid by it for the Michael Garvey interest,—three hundred dollars, with interest thereon from April 30, 1904,—that defendant cannot in this action hold possession of the property under the agreement and at the same time assert the adverse title of the Michael Garvey estate, and that plaintiff is therefore entitled to recover possession of the property, the court gave a judgment for such possession.

This is an appeal by the defendant corporation from such judgment, and from an order denying its motion for a new trial.

So far as the defense made by the answer is concerned, the case is simply that of a vendee who has received possession of the property from the vendors under a contract of sale attempting to retain possession as against the vendors without fulfilling his covenants as to payment, on two grounds: 1. That the title of the vendors is not good, in that there is an outstanding undivided interest in the property, which title such vendee, more than two months before the date fixed by the agreement for the payment of the purchase price, had itself purchased; and 2. That by reason of such purchase the vendee became the absolute owner of such undivided interest, and is, as tenant in common, entitled to remain in possession. There is no merit in these claims.

As to the first ground, the position of appellant is that it may indefinitely keep possession of the property so received from the vendors, while refusing to make payment of the purchase price; in other words, may keep both the property and the purchase money. It has offered to pay nothing for the property, and confines itself now to offering to pay anything only when plaintiff can convey a clear title, which under its claim plaintiff can never do, as the vendee has acquired the outstanding title, and thus made a conveyance impossible. We are now referring solely to the matter set up in the answer. A purchaser cannot retain possession of property delivered to him under a contract of sale without complying with the terms of the contract as to payment for the reason that the title of his vendor is not satisfactory. If a perfect title was to be conveyed, and the vendor is unable to give such a title, the vendee has appropriate remedies, but he cannot keep both the property and the purchase money. The rule applicable, as stated in the syllabus to *Worley* v. *Nethercott,* 91 Cal. 512, [25 Am. St. Rep. 209, 27 Pac. 767], which has since been declared to be a correct summary of the decision (*Haile* v. *Smith,* 128 Cal. 415, [60 Pac. 1032]), is as follows: ''A purchaser of land in possession thereof under a contract of sale, by the terms of which the vendor is to give a warranty deed of the property, conveying a good and perfect title thereto, cannot, upon the vendor's failure and inability to convey a good and perfect title, retain both the land and the purchase money until a perfect title shall be offered him, but he must pay the purchase price according to the contract, and receive such title as the vendor is able to give, if he chooses to retain the possession of the land, or he may rescind the contract, restore the possession to the vendor, and recover the purchase money paid, together with the value of his improvements, after deducting therefrom the fair rental value of the premises; and if he fails and refuses to adopt either course, he is liable to an action of ejectment by the vendor.'' (See, also, *Bruschi* v. *Quail M. and M. Co.,* 147 Cal. 120, [81 Pac. 404]; *Haile* v. *Smith,* 128 Cal. 415, [60 Pac. 1032]; *Hannan* v. *McMickle,* 82 Cal. 122, [23 Pac. 271]; *Gates* v. *McLean,* 70 Cal. 42, [11 Pac. 489]; *Haynes* v. *White,* 55 Cal. 38; *McLeod* v. *Barnum,* 131 Cal. 605, 608, [63 Pac. 924].) The claim of the appellant in this regard is devoid of every equitable feature, in view of the fact that the dam-

age from the alleged outstanding title had been definitely ascertained and such claim of title had been acquired more than two months before the date fixed for the payment of the purchase money, and the least the appellant could have done, in order to show a disposition to do equity, was to tender the amount due on the contract, less the amount paid in acquiring such alleged outstanding title, with interest thereon. (See *Gates* v. *McLean,* 70 Cal. 51, [11 Pac. 489].) Much is said by appellant as to the placing of valuable improvements by it on said land, but both answer and cross-complaint show that all this was done with full knowledge of the facts as to the alleged outstanding title, and after appellant had purchased the same.

As to the second claim of appellant,—viz. that it is the owner of an undivided interest of the property by reason of the purchase of the alleged outstanding title,—appellant, having entered into possession under the vendors' title and in subordination to it, is here estopped from denying such title in defense to plaintiff's action for possession. (See *Coates* v. *Cleaves,* 92 Cal. 427, 430, [28 Pac. 580]; *Hicks* v. *Lovell,* 64 Cal. 14, 20, [49 Am. Rep. 679, 27 Pac. 942]; *Holden* v. *Andrews,* 38 Cal. 119. See, also, 29 Am. & Eng. Ency. of Law, 2d ed., pp. 706, 707.) There is no circumstance in this case excluding the same from the operation of the general rule on this subject.

Appellant was not entitled to any relief under its cross-complaint. The rule declared in *Marshall* v. *Caldwell,* 41 Cal. 611, as to the right of the vendee in possession who discovers that his vendor owns only a portion of the land agreed to be conveyed, and is therefore unable to perform his contract as to the remainder, to proceed to have the contract specifically enforced to the extent of the vendor's interest in the property, and to have abatement out of the purchase money for the deficiency, without restoring or offering to restore possession of the property, is undoubtedly the law, but it does not assist appellant. The only defect in the vendor's title alleged is the outstanding title of the Michael Garvey estate to an undivided interest in the property. This defect was removed by the appellant itself by the purchase by it, while in possession under the contract and more than two months before the date for the payment of the purchase price, of the alleged

outstanding title for the sum of three hundred dollars. The generally accepted rule is to the effect that if the purchaser in possession perfects the title of the vendor pending the executory contract by buying in an outstanding claim, the perfected title inures to the benefit of the vendor for all the purposes of the agreement, and the utmost that the vendee can ask is to be reimbursed for his outlay in obtaining such title, with interest thereon. (See 1 Warville on Vendors, sec. 186; 29 Am. & Eng. Ency. of Law, 2d ed., p. 618; *Stephens* v. *Black,* 77 Pa. St. 138; *Fuson* v. *Lambdin,* 23 Ky. Law Rep. 2245, [66 S. W. 1004]; *Austin* v. *McKinney,* 5 Lea, 488; *Wilkinson* v. *Green,* 34 Mich. 221; *Frink* v. *Thomas,* 20 Or. 265, [25 Pac. 717].) This rule is in full accord with the well-recognized doctrine that no one who goes into possession of land under another will be heard to dispute the title of that other during the continuance of the relation. Acquiring such outstanding claim during such continuance, in the language of the supreme court of Pennsylvania in *Stephens* v. *Black,* 77 Pa. St. 138, "he becomes the trustee of his vendor." Under this rule, assuming the outstanding title to have been good, the title of the vendors was, for all the purposes of the agreement, perfected on April 30, 1904, and the deed then in escrow, ready to be delivered on payment of the purchase price, and which so remained until after appellant's default, offered a perfect title. Assuming that appellant would have been entitled to a conveyance of the whole property upon tendering within the time fixed by the contract the amounts specified therein, less the amount paid for the outstanding title, with legal interest thereon, it appears that no tender or offer of any kind has ever been made, and there is nothing in the case excusing such lack of tender. Under these circumstances, appellant was not entitled to specific performance as to the whole property, and certainly was not entitled, as it sought by its cross-complaint, to specific performance of a portion only upon payment of a proportionate amount of the purchase price, upon the theory that it was the owner of the remaining portion agreed to be conveyed, by reason of its purchase of an adverse title thereto, while it was in possession under the contract of sale. Appellant did not seek in this action any allowance on account of the money expended in acquiring the alleged outstanding title, and no question is

here involved as to the right of appellant to relief on account thereof. Under these circumstances, and in view of what we have heretofore said, it is not necessary to determine whether the finding regarding the forfeiture of the interest of Michael Garvey to the other owners is sustained by the evidence. It is immaterial here whether the alleged outstanding title of Michael Garvey was good or bad.

Complaint is made that the court failed to make findings as to certain issues, but, in our judgment, the findings are sufficient as to all *material* issues, and a judgment will not be reversed or a new trial granted for failure to find as to immaterial matters.

It is further urged that the court should have tried the issues arising on the cross-complaint and the answer thereto, before trying the issues made by the complaint and answer. As to this, it is sufficient to say that, so far as the record shows, all the issues were tried together by consent of the parties.

There is no other point requiring notice.

The judgment and order are affirmed.

Shaw, J., and Sloss, J., concurred.